Charles James **WITT**, Plaintiff,

v.

**ROADWAY EXPRESS**, Jim Kasperski, Teamsters Local # 41, and Warren Stevens, Defendants.

Civ. A. No. 94–2247–GTV.

United States District Court, D. Kansas.

March 17, 1995.

Thomas L. Thurston, Erin Waugh Gorney, Perry, Hamill & Fillmore, Overland Park, KS, for Charles James Witt.

Daniel B. Denk, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, for Roadway Express.

John P. Hurley, Donald R. Aubry, Julianne H. Carter, Jolley, Walsh & Hager, P.C., Kansas City, MO, for Teamsters Local # 41.

Donald R. Aubry, Julianne H. Carter, Jolley, Walsh & Hager, P.C., Kansas City, MO, for Warren Stevens.

### MEMORANDUM AND ORDER

BEBBER, District Judge.

This case is before the court on motions to dismiss plaintiff's action for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6), and for summary judgment. The motions were filed by defendants Teamsters Local # 41 and Warren Stevens (Doc. 18), and by defendants Roadway Express and Jim Kasperski (Doc. 24). For the reasons explained below, the motions are granted in part and denied in part. Plaintiff's claims, with the exception of the claims brought pursuant to 42 U.S.C. § 1981, will be dismissed.

### I. Facts

Plaintiff was employed by Roadway Express (Roadway) until he resigned on June 9, 1993. He had been injured on January 26, 1993, and did not return to work. During his employment with Roadway plaintiff was represented by Teamsters Local # 41 (Local # 41). Plaintiff contends that although he voluntarily signed a resignation letter, he felt compelled to resign because of pressure from his supervisor, Jim Kasperski, and due to the racially discriminatory work environment.

In January 1992, plaintiff filed discrimination complaints with the Kansas Human Rights Commission (KHRC) against Local 41 and Roadway and their representatives. In the complaints, plaintiff claimed that he was discriminated against on account of his race. He specifically alleged that Local 41 did not properly represent him, accused him of non-payment of dues, and threatened to jeopardize his employment. He also alleged that Roadway had unfairly disciplined him and passed him over for assignments given to less senior drivers, and that his car had been damaged and a Ku Klux Klan letterhead had been placed on his windshield. The KHRC forwarded the complaints to the Equal Employment Opportunity Commission (EEOC) for dual filing purposes. The EEOC mailed right-to-sue notices to plaintiff on January 27 and 28, 1994. Plaintiff alleges that he did not receive the notice relating to his charge against Local 41 until mid-March 1994. In a letter dated February 22, 1994, the KHRC advised plaintiff that his case was being closed and that he could request review of this decision by the EEOC.

Plaintiff had previously filed charges against Local 41 with the National Labor Relations Board (NLRB) which were based in part on communications from the union regarding plaintiff's delinquency in the payment of his union dues. Plaintiff also complained in those charges about difficulty in making contact with the union's business agent. In December 1990, the NLRB declined to issue a complaint concerning these charges.

Plaintiff alleges that he was called a scab by his fellow employees continuously during his employment at Roadway, and that these incidents occurred at several terminals, including the one in St. Louis, Missouri. He also alleges other incidents of harassment, including, damage to his vehicle, intrusion into his home, and interruption of his rest during layovers. Plaintiff contends that this harassment was condoned by the union representative, Warren Stevens, and plaintiff's supervisor Jim Kasperski, and was perpetuated by his co-workers, office personnel, dispatchers, and supervisors at Roadway. Plaintiff alleges that although Roadway and Kasperski knew of these incidents, they did nothing to prevent or stop them.

Plaintiff submitted the complaint in this lawsuit to the Clerk's office on June 13, 1994, along with motions to proceed in forma pauperis and for appointment of counsel. On June 16, 1994, plaintiff's motions were granted and his complaint was formally filed. The allegations contained in plaintiff's complaint arguably state the following claims: discrimination based on race in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e et seq., common law claims of defamation and harassment, and violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981. These claims are asserted against all defendants. In addition, plaintiff charges defendant Local 41 with breaching its duty of fair representation. In their motions, defendants seek dismissal of all claims.

## II. Legal Standards

Under Fed.R.Civ.P. 56(c), summary judgment is proper only if the evidence, reviewed in the light most favorable to the plaintiff, the party opposing the motion, demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See Deepwater Inv., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by showing that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). A "material" fact is one "that might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), and a "genuine" issue is one for which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has properly supported its motion for summary judgment, "a party opposing ... may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

The substantive law regarding a claim will identify which facts are material in a motion for summary judgment, and only factual disputes that might affect the outcome of the case under governing law will preclude entry of summary judgment. *Id.* at 248, 106 S.Ct. at 2510. In applying this standard, the court views the evidence, and all reasonable inferences derived from the evidence, in the light most favorable to the party opposing the motion. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990).

Those parts of defendants' motions related to plaintiff's state law claims and his claim under 42 U.S.C. § 1981 are not based on matters outside the pleading. As a result, the court will treat those portions as motions to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). The court is cognizant of the fact that it may not dismiss a cause of action for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Grider v. Texas Oil & Gas Corp.*, 868 F.2d 1147, 1148 (10th Cir.), *cert. denied*, 493 U.S. 820, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989). "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984). The court must view all reasonable inferences in favor of the plaintiff and the pleadings must be liberally construed. *Id.*; Fed.R.Civ.P. 8(f). The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

## III. Analysis

### A. Title VII Claims

Defendants contend that plaintiff's Title VII action is time-barred because it was filed more than 90 days after plaintiff received his right-to-sue notice. Title VII provides that if the EEOC dismisses a discrimination charge or takes no action within a specified period, then the EEOC "shall [so] notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge." 42 U.S.C. § 2000e–5(f)(1). The 90–day period for filing suit generally commences on the date that the complainant actually receives the EEOC right to sue notice. *Williams v. Southern Union Gas Co.*, 529 F.2d 483, 487 (10th Cir.), *cert. denied*, 429 U.S. 959, 97 S.Ct. 381, 50 L.Ed.2d 325 (1976); *Plunkett v. Roadway*

*Express, Inc.*, 504 F.2d 417, 418–19 (10th Cir.1974).

In this case, two right-to-sue notices are involved because the charges against Roadway and Local 41 were filed separately. Both notices are dated January 27, 1994, but EEOC records show that the notices were mailed one day apart. The notice relating to the complaint against Roadway was mailed by certified mail on January 27, and the notice relating to the complaint against Local 41 was mailed on January 28. While both notices were mailed to plaintiff at the same address as shown on his complaint, plaintiff alleges that he did not receive the Local 41 notice until mid-March, 1994. Plaintiff's complaint is deemed to have been filed on June 13, 1994. *See Jarrett v. US Sprint Communications Co.*, 22 F.3d 256, 259 (10th Cir.) (complaint deemed filed when first received by Clerk of Court if *in forma pauperis* motion later granted), *cert. denied,* — .U.S. ——, 115 S.Ct. 368, 130 L.Ed.2d 320 (1994). Plaintiff therefore alleges that his Title VII complaint is timely filed, as least with respect to the charges against Local 41.

The EEOC records show that the notice was mailed to plaintiff on January 28, 1994. The EEOC, however, did not request a return notice of delivery with its certified mailing which might have provided some evidence of actual receipt of the notice. By the same token, plaintiff has not proved when he received the notice beyond making the assertion that he did not receive the notice until "mid-March."

When the actual receipt date of the right-to-sue notice is unknown or is in dispute, courts have applied presumptions that the notice was received within a certain number of days after mailing. Some courts have applied the common law presumption that receipt occurs within five days after mailing. *See Cook v. Providence Hosp.*, 820 F.2d 176, 179 n. 3 (6th Cir.1987); *Roush v. Kartridge Pak Co.*, 838 F.Supp. 1328, 1335 (S.D.Iowa 1993); *Washington v. Foresman*, 148 F.R.D. 241, 244 (N.D.Ind.1993); *Wagher v. Guy's Foods, Inc.*, 768 F.Supp. 321, 323 (D.Kan. 1991). Other courts have borrowed the presumption contained in Fed.R.Civ.P. 6(e) and held that a plaintiff is presumed to receive the EEOC notice within three days of its mailing. *See Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 148 n. 1, 104 S.Ct. 1723, 1723 n. 1, 80 L.Ed.2d 196 (1984); *Williams v. Mississippi Action for Progress, Inc.,* 824 F.Supp. 621, 622 n. 1 (S.D.Miss. 1993); *White v. Union Pacific R.R.,* 805 F.Supp. 883, 886–87 (D.Kan.1992); *Rich v. Bob Downes Chrysler Plymouth, Inc.,* 831 F.Supp. 733, 735 (E.D.Mo.1993).

■ Local 41 has presented evidence showing that the notice was actually mailed on January 28, 1994. This is sufficient to invoke a presumption that the notice was received by plaintiff at least within five days of its mailing. *See Godfrey v. United States,* 997 F.2d 335, 338 (7th Cir.1993). Plaintiff has not presented any evidence to rebut the presumption or to establish the actual receipt date. Compliance with the 90–day filing requirement is a statutory precondition to suit, and the burden rests with plaintiff to prove this condition precedent when the defendant denies that the condition has been fulfilled. *Jackson v. Seaboard Coast Line R. Co.,* 678 F.2d 992, 1010 (11th Cir.1982). Plaintiff has not carried his burden in this case, and the court concludes that plaintiff's complaint was not filed within 90 days after receipt of the EEOC right-to-sue notice.

■ Plaintiff contends that even if the complaint was filed more than 90 days after receipt of the right-to-sue notices, the 90–day limitations period should be equitably tolled. Filing a civil action within the 90–day period following receipt of a right-to-sue notice is not a jurisdictional prerequisite, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling. *Gonzalez–Aller Balseyro v. GTE Lenkurt, Inc.,* 702 F.2d 857, 859 (10th Cir. 1983). Plaintiff advances two grounds for tolling the limitations period in this case: (1) plaintiff was trying, unsuccessfully, to obtain counsel during the 90–day period; and (2) the letter plaintiff received from the KHRC confused plaintiff and misled him as to when his 90–day period began.

■ Equitable tolling is appropriate only in limited circumstances. "In this circuit, a Title VII time limit will be tolled only if there

has been active deception of the claimant regarding procedural requirements." *Jarrett v. U.S. Sprint Communications Co.,* 22 F.3d 256, 260 (10th Cir.1994) (citing *Scheerer v. Rose State College,* 950 F.2d 661, 665 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2995, 120 L.Ed.2d 872 (1992)). For example, equitable tolling might be appropriate if a plaintiff has been "lulled into inaction by her past employer, state or federal agencies, or the courts." *Carlile v. South Routt School Dist. RE 3–J,* 652 F.2d 981, 986 (10th Cir.1981).

▮ The fact that plaintiff was attempting to secure counsel during the 90–day period is not indicative of any active deception that would invoke the principles of equitable tolling, and plaintiff has offered no case law to support this proposition. In *Gonzalez–Aller Balseyro,* the court determined that equitable tolling was applicable because the district court clerk informed plaintiff that the filing of his right-to-sue notice would toll the limitations period until plaintiff had sufficient time to obtain counsel. 702 F.2d at 859. The plaintiff never obtained counsel and proceeded *pro se.* Because plaintiff had relied on the clerk's statement, the court held that equitable tolling was appropriate. *Id.* No similar facts are alleged in this case. Because plaintiff does not allege that he was misled in any way, the 90–day limitations period will not be tolled on the basis that plaintiff was seeking counsel.

Plaintiff also asserts that he was confused by the letters he received from the KHRC. The letters, dated February 22, 1994, informed plaintiff that his case was being administratively closed and placed in the inactive files due to lack of jurisdiction. The letters also stated that plaintiff had a right to have this action reviewed by the EEOC, and gave an address to which plaintiff could write to request such a review. Plaintiff states in an affidavit that because the letter informed him that he could obtain review from the EEOC, he thought that the 90–day period did not begin to run until after the EEOC had reviewed his case.

▮ Plaintiff's confusion is not a sufficient ground on which to base equitable tolling. The question is whether the notices

from the EEOC and KHRC were misleading. In *Martinez v. Orr,* 738 F.2d 1107 (10th Cir.1984), the plaintiff received a letter from the EEOC informing him that he had a right to bring suit within 30 days of receipt of the letter. *Id.* at 1111. The letter also discussed the plaintiff's "right to request reopening and reconsideration by the EEOC." *Id.* The plaintiff followed the latter course of action and as a result missed his chance to bring suit. The court concluded that the letter had failed "to make clear that the right to sue and the right to request reopening are distinct, independent rights, and that an election to pursue only the latter completely waives the former." *Id.* The court concluded that equitable tolling was appropriate because the plaintiff was "misled and lulled into inaction by the EEOC." *Id.* at 1112.

In contrast, plaintiff in this case was not actively misled or lulled into inaction. The right-to-sue notices clearly stated that plaintiff had 90 days in which to file suit. Nothing in the letters from the KHRC indicated that the 90–day period was in any way affected by the KHRC's termination of the case due to lack of jurisdiction. Although the letter provided for EEOC review of the action, plaintiff never requested such a review.

In summary, plaintiff's failure to file a timely complaint was not due to a false representation by any court, agency, or potential defendant. As a result, the circumstances of this case do not merit equitable tolling of the limitations period. Plaintiff's Title VII claims are therefore dismissed.

### B. Breach of Duty of Fair Representation

Plaintiff alleges that Local 41 failed to represent him properly in his grievances against Roadway. Specifically, he alleges that Local 41 failed to address his grievances concerning job assignments, and that he had difficulty in communicating with the Local 41 business agent. Local 41 argues that this claim should be dismissed because it is barred by the six-month statute of limitations mandated by 29 U.S.C. § 160(b).

▮ Federal labor law gives rise to a statutory duty on the part of a union to fairly

represent all of its members. *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 909–10, 17 L.Ed.2d 842 (1967). The statutory duty of fair representation requires the union to represent employees in its bargaining unit "honestly and in good faith and without invidious discrimination or arbitrary conduct." *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 570, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976). A union breaches its duty when its "conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca,* 386 U.S. at 190, 87 S.Ct. at 916.

The Supreme Court, in *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), held that the six-month limitations period set forth in § 10(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(b), is the appropriate statute of limitations for such breach of duty claims. Section 10(b) sets out the statute of limitations for bringing unfair labor practice claims before the National Labor Relations Board. 29 U.S.C. § 160(b). The *DelCostello* Court noted the "family resemblance" between an unfair labor practice charge and a charge of breach of duty of fair representation brought by an employee against a union. 462 U.S. at 170, 103 S.Ct. at 2293–94.

Plaintiff argues that *DelCostello* is not controlling under the facts of this case because *DelCostello* involved a "hybrid" suit against both the employer and the union. In such a hybrid suit, an employee may bring an action against the employer for breach of the collective bargaining agreement and against the union for violating its duty of fair representation. Plaintiff contends that because he has made no claim against the employer for breach of the collective bargaining agreement, the six-month statute of limitations does not apply, and the court should adopt the three year statute of limitations from Kansas state law, as found in K.S.A. 60–512.

While *DelCostello* was a hybrid suit, the six-month statute of limitations has also been found applicable to suits brought solely against the union for breach of its duty of fair representation. *See Erkins v. United Steelworkers,* 723 F.2d 837 (11th Cir.) (apply-ing six-month limitations period to breach of duty of fair representation claim not joined by breach of contract claim against employer), *cert. denied,* 467 U.S. 1243, 104 S.Ct. 3517, 82 L.Ed.2d 825 (1984); *Sisco v. Consolidated Rail Corp.,* 732 F.2d 1188 (3d Cir. 1984) (action for breach of duty of fair representation under the Railway Labor Act); *Eatz v. DME Unit of Local Union Number 3,* 794 F.2d 29 (2d Cir.1986) (six-month limitations period applies to unfair representation claims standing alone). Courts have adopted the six-month statute of limitations for fair representation claims based on the *DelCostello* Court's rationale that such actions closely resembled claims of unfair labor practice. Such an analysis is particularly appropriate in this case when plaintiff's allegations against Local 41 which comprise the breach of fair representation claim are the same allegations that were previously included in plaintiff's unfair labor practice charge.

For these reasons, the court concludes that a six-month limitations period applies to plaintiff's claim the Local 41 breached its duty of fair representation. Plaintiff's claim is time-barred because plaintiff was last employed, and last represented by Local 41, over one year before the filing of his complaint.

### C. Defamation and Harassment

Plaintiff's complaint also appears to assert state law tort claims against all defendants. The defamation claim arises out of an incident in October 1990 in which plaintiff alleges that Local 41 accused him of being in arrears in his union dues. As a result of that accusation, his fellow employees began calling him "scab" and this continued even though the union and plaintiff's co-workers later knew that plaintiff was current in the payment of his union dues. He alleges that his co-workers continued to call him "scab" throughout his employment with Roadway, and that these incidents occurred at the Kansas office and at several terminals across the country, including the one in St. Louis.

Plaintiff also alleges a number of incidents which form the basis for his claim of harassment against the defendants. Plaintiff states

that he was the victim of various forms of harassment including name-calling, damage to his vehicle, intrusion into his home, and interruption of his rest during layovers.

### 1. Claims against the Union

■■■■ To the extent that plaintiff's defamation claim against Local 41 is based on the accusation that plaintiff was in arrears in his union dues, that claim is clearly barred by the statute of limitations. It is not clear from plaintiff's complaint where the alleged defamatory statements were made. The Teamsters office is located in Missouri, but plaintiff's place of employment was in Kansas. The action, however, is barred by the statutes of limitations of both states. Under Kansas law a plaintiff must bring a suit for defamation within one year of the publication of the alleged defamatory statement. *See* K.S.A. 60–514. Under Missouri law such an action must be brought within two years. *See* Mo.Rev.Stat. § 516.140. Local 41's statement regarding plaintiff's union dues was allegedly made in October 1990, over three years prior to the filing of plaintiff's complaint.

■■■■ To the extent that plaintiff's defamation and harassment claims are based on actions taken by plaintiff's co-workers, those claims must also fail. Local 41 is not liable for the actions of plaintiff's union co-workers who were not representatives or agents of the union. *See Anspach v. Tomkins Industries, Inc.,* 817 F.Supp. 1499, 1514 (D.Kan. 1993) (citing *Kux Mfg. Co. v. N.L.R.B.,* 890 F.2d 804, 809 (6th Cir.1989)).

■■■■ Plaintiff alleges in his affidavit that the harassment from his co-workers "began with, and was condoned by, the Union Representative, Warren Stevens." Plaintiff, however, alleges no facts to support his assertion that union representatives or officials were involved in instigating or condoning the alleged harassing conduct. Similarly, plaintiff has alleged no facts to show that Local 41 instigated or condoned the co-workers' alleged repeated references to plaintiff as a "scab." Even if these statements began as a result of Local 41's announcement regarding plaintiff's nonpayment of union dues, the later statements cannot serve as a basis for a

defamation claim against Local 41. At most, the name-calling may have constituted a part of plaintiff's damages if he could have established that Local 41's declaration constituted defamation.

■■■■ Plaintiff also alleges that he complained several times to the union steward about the harassment, but no action was ever taken. This allegation, to the extent that it is true, cannot serve as the basis for establishing that Local 41 encouraged or condoned the alleged harassment. It is more properly a component of plaintiff's claim that the union violated its duty of fair representation which was discussed earlier.

For these reasons, the court concludes that plaintiff's state law claims against Local 41 must be dismissed.

### 2. Claims against the Employer

Plaintiff alleges in his affidavit that he complained to his supervisor, Jim Kasperski, about the alleged defamation and harassment by plaintiff's co-workers, but that no action was taken. Plaintiff contends that Roadway failed to properly supervise or reprimand his co-workers.

■■■■ Kansas law does not recognize the tort of negligent supervision in the factual context of this case. The plaintiff in *Anspach v. Tomkins Industries, Inc.,* 817 F.Supp. 1499 (D.Kan.1993) sought to hold her former employer liable for the outrageous conduct of her co-workers. The court specifically rejected plaintiff's arguments that the employer was liable on the grounds of negligent retention, negligent supervision, or negligent failure to prevent a dangerous situation. *Id.* at 1520. The court noted that the Kansas Supreme Court had implicitly recognized the tort of negligent retention and supervision in *Kansas State Bank & Trust Co. v. Specialized Transportation Services, Inc.,* 249 Kan. 348, 819 P.2d 587 (1991). However, *Kansas State Bank* and other cases "all concern situations where the alleged victim of the employee's tortious activity is a member of the public, not another employee of the defendant. It has long been the law in Kansas that an employer is not liable for·injuries inflicted by one employee

upon another employee when the act causing the injury was not done to promote the employer's business and was no part of the employee's duties." *Anspach,* 817 F.Supp. at 1520.

■ The allegations by plaintiff in this case do not permit an inference that the alleged harassment by plaintiff's co-workers was within the scope of their employment or was done to promote the employer's business. As a result, plaintiff's state law claims against Roadway must be dismissed to the extent that plaintiff's claims are based on negligent retention or negligent supervision.

### D. Section 1981

In his responses to defendants' motions, plaintiff contends that the allegations contained in his complaint are sufficient to support a claim that defendants violated 42 U.S.C. § 1981.

Defendants argue that such a claim is barred by the two-year statute of limitations. *See Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Garcia v. University of Kansas,* 702 F.2d 849, 850 (10th Cir.1983). Roadway contends that the conduct which forms the basis for plaintiff's § 1981 claim is the same as that alleged in plaintiff's January 1992 charge filed with the KHRC. Local 41 maintains that the alleged conduct is the same as that alleged in plaintiff's 1990 complaint filed with the National Labor Relations Board.

■ Liberally construing the allegations contained in plaintiff's complaint, the court concludes the plaintiff alleges facts occurring within the limitations period which could form the basis for a § 1981 claim. For example, plaintiff contends that the alleged harassment continued throughout his employment with Roadway. Although the harassment was perpetrated by plaintiff's co-workers, employers may be held liable under § 1981 for failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known. *See Vance v. Southern Bell Telephone and Telegraph Co.,* 863 F.2d 1503, 1512 (11th Cir.1989); *Hunter v. Allis–Chalmers Corp.,* 797 F.2d 1417, 1421–22 (7th Cir. 1986). Similarly, a labor union's failure to

act can also be the source of § 1981 liability. *See Woods v. Graphic Communications,* 925 F.2d 1195, 1202–03 (9th Cir.1991). In this case, plaintiff alleges that both the union representative and plaintiff's supervisor knew of the harassment, allegedly based on race, and failed to take any action to remedy the problem. Because plaintiff alleges a continuing pattern of harassment during his employment with Roadway, his claim is not barred by the statute of limitations.

Roadway also argues that plaintiff's § 1981 claim should be dismissed because the conduct complained of is not alleged to have been racially motivated. Specifically, Roadway cites plaintiff's allegation that he was called "scab" by his co-workers. According to Roadway, this conduct, even if it constitutes harassment, can not be found to have been racially motivated.

■ Racial animus is an element necessary to support a discrimination claim under § 1981. *General Bldg. Contractors Ass'n, Inc. v. Pennsylvania,* 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982). Plaintiff's complaint clearly alleges that the harassment was racially motivated. Harassment need not specifically refer to race in order to be the product of racial animus. It may well be that plaintiff is unable to ultimately prove his charge, but on the record before the court plaintiff's § 1981 claim cannot be dismissed.

IT IS, THEREFORE, BY THE COURT ORDERED that the motions to dismiss plaintiff's action for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6), and for summary judgment filed by defendants Teamsters Local # 41 and Warren Stevens (Doc. 18), and by defendants Roadway Express and Jim Kasperski (Doc. 24) are granted in part and denied in part. Plaintiff's claims, with the exception of the claims brought pursuant to 42 U.S.C. § 1981, are dismissed.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**