Deborah K. FARRIS, Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS
OF WYANDOTTE COUNTY, KANSAS
and Robert Spillman, Defendants.

Civil Action No. 95–2047–GTV.

United States District Court,
D. Kansas.

April 3, 1996.

M. Ellis Rainey, II, Rainey, Byrum & Rainey, Overland Park, KS, for plaintiff.

Carl A. Gallagher, Daniel B. Denk, Gregory P. Goheen, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, R. Jeff Fendorf, Office of the County Counselor, Kansas City, KS, for Wyandotte County Board of County Commissioners.

Carl A. Gallagher, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, R. Jeff Fendorf, Office of the County Counselor, Kansas City, KS, for Robert Spillman.

Robert Spillman, Kansas City, KS, Pro Se.

## MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

This employment discrimination case is before the court on defendants' motion for partial summary judgment (Doc. 62). Plaintiff has responded and opposes the motion. For the reasons set forth below, the motion is granted in part and denied in part.

The Wyandotte County Sheriff's Department employed plaintiff as a civil process server and a detective. In her amended complaint, plaintiff brought federal and state law claims against defendant Board of County Commissioners of Wyandotte County (the "County") as her employer and defendant Robert Spillman, the Administrative Support Commander for the Sheriff's department. According to the recently filed pretrial order, plaintiff has agreed to dismiss her claims against defendant Spillman. The court, therefore, only will address the portion of defendant's motion regarding plaintiff's claims against defendant County.

Plaintiff alleges that the County subjected her to hostile work environment sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. Plaintiff further alleges that defendant County violated her constitutional rights of due process and equal protection triggering liability under 42 U.S.C. § 1983. In addition to the federal claims, plaintiff seeks recovery from defendant County on state law claims of intentional infliction of emotional distress and negligent hiring, retention, and supervision.

Plaintiff seeks actual and punitive damages on all claims. Plaintiff also seeks equitable relief in the form of reinstatement and orders enjoining the County from further discriminatory practices. Finally, plaintiff requests attorneys fees and expenses as provided for by law.

Defendant County seeks summary judgment on all of plaintiff's claims. Further, defendant County contends that plaintiff is not entitled to punitive damages.

## I. Summary Judgment Standards

In deciding a motion for summary judgment, the court must examine any evidence tending to show triable issues in the light most favorable to the nonmoving party. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir. 1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). A moving party is entitled to summary judgment only if the evidence indicates "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine factual issue is one that "can reasonably be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

## II. Factual Background

The following uncontroverted facts are established in accordance with Fed.R.Civ.P. 56 and D.Kan.R. 56.1.

Plaintiff began her employment with the Wyandotte County Sheriff's Department in July 1982. In January 1990, plaintiff became a deputy investigator for the sheriff. At the beginning of Sheriff Bill E. Dillon's administration in January 1993, plaintiff was transferred from investigations to civil process. In the civil process division, plaintiff's duties included serving process, evictions, and making runs to Osawatomie State Hospital. She also continued her duties as a part time investigator.

In January 1993, defendant Robert Spillman began employment with the Wyandotte County Sheriff's Department as the Administrative Support Commander under Sheriff Dillon's new administration. In July 1993, Sheriff Dillon and Spillman promoted plaintiff to a full time detective. The parties agree that Spillman supervised plaintiff in her position in civil process, but disagree whether Spillman retained his supervisory position over plaintiff following her promotion to full time detective.

Plaintiff alleges that Spillman sexually harassed plaintiff and others from the beginning of his employment with the Sheriff's department in January 1993 until the time she left her employment on March 16, 1994. Plaintiff alleges that Spillman's harassment of her began in July 1993. Plaintiff testified at her deposition that Spillman, on almost a daily basis, would bend over to look up her skirts or would look down her blouse, raised his eyebrows, licked his lips or made inappropriate remarks, all with sexual connotations. Plaintiff allegedly told plaintiff that he thought her breasts were "big" and that "he wanted to see them." Spillman allegedly made lewd requests to touch and "fondle" plaintiff.

Plaintiff alleges two specific instances of sexual harassment by Spillman. Plaintiff testified at her deposition that on January 12, 1994, Spillman requested that she meet him at a bar. Plaintiff alleges that she construed the requested meeting as an order. Plaintiff testified that outside the bar, Spillman grabbed her and exposed himself to her. Plaintiff alleges that Spillman rubbed his exposed genitals against her buttocks, then spun her around to face him. Plaintiff alleges that at this point Spillman pushed her head toward his groin area and attempted to force her to perform fellatio upon him.

Plaintiff testified that the second incident occurred on February 24, 1994. Plaintiff testified that she was in Spillman's office when he shut the door, grabbed her and kissed her on the lips.

On March 10, 1994, plaintiff first reported the alleged sexual harassment to Gail Crawford, a Sheriff's department employee of unknown rank. Crawford apparently informed Sheriff Dillon of plaintiff's complaint. On March 15, 1995, plaintiff was called to the Sheriff's office for a meeting which included the Sheriff, the Undersheriff, Crawford, and plaintiff. Plaintiff testified that when she arrived at the meeting, the Sheriff stated to plaintiff that "I just want you to know that friendship will have nothing to do with this." The Sheriff then left the office. Plaintiff believed that this statement was in response to the concerns she expressed to Crawford that Spillman and the Sheriff were friends and that the friendship might affect whether plaintiff's allegations were taken seriously. Following the Sheriff's departure, plaintiff related the incidents of sexual harassment to Crawford and the Undersheriff, Jim Stevens.

The Sheriff's department received at least two complaints of sexual harassment prior to plaintiff's complaint. Jeneal Manis and Deborah Mecum were employed with the Sheriff's department at the time Spillman was hired in January 1993. In March 1993, Manis and Mecum filed separate Equal Employment Opportunity Commission (EEOC) charges which were addressed to Richard Kamaski as Wyandotte County Commissioner, and to the Wyandotte County Sheriff's Department. The EEOC charges did not specifically name Spillman as the harasser. Mecum's charge alleged sexual harassment by her supervisor. Manis's charge alleged that she was the victim of sexual harassment and that she observed harassment of another employee by the same harasser. Manis and Mecum testified at their depositions that the alleged harasser was Spillman.

On March 16, 1994, plaintiff left work at the Sheriff's department and did not return.

Plaintiff testified that another employee told her that Spillman, the Undersheriff, and others at the department were in the reception area on the night of March 15, 1994, laughing and talking. Plaintiff assumed that they were talking about her allegations against Spillman. Plaintiff testified that she confronted the Undersheriff about the incident. The Undersheriff allegedly admitted to plaintiff that Spillman knew about the allegations and had denied them.

Following plaintiff's departure from her job at the Sheriff's department, her attorney and the Wyandotte County Counselor negotiated for her return to the department. Plaintiff indicated her willingness to return to her job as an investigator, but only if she had no contact with Spillman. The County refused this request but indicated that Spillman had modified the reporting assignments so that plaintiff could report to others in the department. The County would not promise plaintiff that there would be no contact between plaintiff and Spillman. In the alternative, the County offered her a position in the detention center away from Spillman. The position had less favorable working hours, but the County promised her the same pay she received as an investigator. Plaintiff refused to return to the department if she was forced to continue contact with Spillman. In addition, plaintiff refused to take the position at the detention center. Plaintiff considered the detention center job a demotion and continued to seek a return to her job as an investigator under the condition that she have no contact with Spillman.

The County's counselor indicated to plaintiff that plaintiff's complaint of sexual battery had been turned over to the Kansas Bureau of Investigation (KBI). The counselor also indicated in a letter that the Undersheriff had counseled Spillman regarding the allegations of sexual harassment. Plaintiff received no other indication that an internal investigation of the sexual harassment was proceeding or that Spillman was subject to any disciplinary action.

## III. Discussion

### A. Sexual Harassment Under Title VII

■ Defendant County contends that it is not liable for sexual harassment occurring within the Sheriff's department because it has no authority to institute personnel action concerning the Sheriff's deputies and assistants. Essentially, defendant County raises two issues: (1) Is the County the employer of plaintiff and Spillman? (2) If so, does the County incur liability under Title VII for incidents of sexual harassment which occur within the Sheriff's department?

Initially, it is helpful to review the organization of the County government under Kansas law. The County is a political subdivision recognized by state statute. K.S.A. §§ 19–101 et seq. The statutes provide for a board of county commissioners that acts on behalf of the county. K.S.A. §§ 19–103 & 19–201 et seq. The statutes also provide for a number of elected county officers including a sheriff. K.S.A. §§ 19–801 et seq. The sheriff appoints an undersheriff who serves at the pleasure of the sheriff. K.S.A. § 19–803. The sheriff also is entitled to "appoint, promote, demote and dismiss additional deputies and assistants necessary to carry out the duties of the office, for whose official acts the sheriff is responsible." K.S.A. § 19–805(a). The sheriff's personnel actions are subject to any "personnel policies and procedures established by the board of county commissioners for all county employees other than elected officials." K.S.A. § 19–805(d)(1).

The court in *Owens v. Rush*, 636 F.2d 283 (10th Cir.1980), addressed the issue of whether a county incurs Title VII liability for acts occurring within the sheriff's department. In *Owens*, a former deputy sheriff brought a sexual discrimination claim under Title VII. The court held that a county sheriff is an "agent" of the county and is liable under Title VII even though the department employed fewer than fifteen employees.[1] The court concluded that "it is inappropriate to condition the County's liability on whether the allegedly improper act was committed by the Board or the Sheriff

---

1. The term employer under Title VII includes "governments, governmental agencies (and) political subdivisions" that have fifteen or more employees ..., and any agent of such (government, government agency or political subdivision)." 42 U.S.C. § 2000e(a), (b).

when both are agents of the same political entity—the County." *Id.* at 286.

Although not specifically stated, it is implicit in the Tenth Circuit's decision in *Owens* that the county is the employer of sheriff's department employees for Title VII purposes. *Johnson v. Board of County Comm'rs for the County of Fremont,* 859 F.Supp. 438, 441 (D.Colo.1994). Further support for this proposition lies in the fact that the county does exert some control over the sheriff's department. The board of county commissioners is entitled to issue employment policies which the sheriff's department must follow. The board also has funding control over the sheriff's department. *Owens,* 636 F.2d at 286 n. 3; *Johnson,* 859 F.Supp. at 441–42.

Defendant County apparently views plaintiff's complaint as asserting claims for failure of the Board of County Commissioners to remedy any alleged harassment occurring within the Sheriff's department. K.S.A. § 19–105 provides that in suits against the county, a plaintiff must name the board of county commissioners as defendant. This requirement does not change the fact that plaintiff's action is against the County as employer, not against the Board of County Commissioners. The court concludes that the County is liable as the employer if its agent, the Wyandotte County Sheriff, has incurred liability under Title VII as discussed below.

■ The next step in the analysis is whether the County, as the employer of plaintiff and Spillman, should incur liability under Title VII for the alleged hostile work environment sexual harassment. The United States Supreme Court held in *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), that courts should look to agency principles to determine employer liability for hostile work environment sexual harassment. The Tenth Circuit has adopted this view and has identified three potential bases for liability. *See Hirase–Doi v. U.S. West Communications, Inc.,* 61 F.3d 777, 783 (10th Cir.1995). In *Hirase–Doi,* the court looked to the Restatement (Second) of Agency § 219 for guidance:

An employer is liable for: (1) any tort committed by an employee acting within the scope of his or her employment; (2) any tort committed by an employee in which the employer was negligent or reckless; or (3) any tort in which the employee purported to act or speak on behalf of the employer and there was reliance upon apparent authority, or the employee was aided in accomplishing the tort by the existence of the agency relation.

*Id.* (citing *Hirschfeld v. New Mexico Corrections Dep't,* 916 F.2d 572, 576 (10th Cir.1990) (citing Restatement (Second) of Agency § 219)). Lack of notice of the alleged harassment is not an absolute defense if one of the above three factors is present. *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1417 (10th Cir.1987).

Section 219(1) of the Restatement is of little help in assessing liability because sexual harassment is rarely, if ever, within the scope of employment. *Id.* at 1417–18. Plaintiff has not alleged that Spillman was acting within the scope of his employment when the acts of sexual harassment occurred.

Under § 219(2)(b), defendant County is liable for the alleged acts of sexual harassment by Spillman if it was negligent or reckless in failing to respond to hostile work environment sexual harassment. Defendant County argues that it was not negligent or reckless because plaintiff did not inform the Sheriff of the sexual harassment until the day before she left her employment. Plaintiff argues that there is ample evidence that defendant County knew or should have known of Spillman's harassment which raises a genuine issue of material fact precluding summary judgment.

■ Employer negligence in this context is defined as "failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known." *Hirschfeld,* 916 F.2d at 577 (citations and quotations omitted). In *Hirase–Doi,* 61 F.3d at 783, the Tenth Circuit Court of Appeals stated that previous complaints of harassment could serve to put the employer on notice even if the employer did

not know that this particular plaintiff was one of the perpetrator's victims.

Plaintiff has presented evidence that at least two other persons, Jeneal Manis and Debbie Mecum, filed EEOC charges alleging sexual harassment. Although the complaints do not name Spillman as the perpetrator, a rudimentary investigation would have revealed that their complaints involved harassment by Spillman. The EEOC charges were addressed to the Sheriff's department and to a Wyandotte County Commissioner, Richard Kamaski. The court concludes that plaintiff has presented sufficient evidence that defendant County knew or should have known about Spillman's alleged sexual harassment of employees.

■ Finally, under § 219(2)(d) of the Restatement (Second) of Agency defendant County incurs Title VII liability if Spillman used his apparent authority or agency relationship to create a hostile work environment. Plaintiff contends that Spillman used his position of authority to aid in his alleged sexual harassment.

The facts presented in the summary judgment motion establish that Spillman was the Administrative Support Commander and that plaintiff's rank was below Spillman's. The parties disagree whether Spillman had direct supervisory authority over plaintiff. For the purposes of this motion, the court will accept plaintiff's allegation that Spillman had supervisory authority over her. Plaintiff further alleges that Spillman used his position of authority to further his harassment. Plaintiff testified that Spillman ordered her to meet him at the bar where he allegedly exposed himself to her.

The court concludes that plaintiff has presented sufficient evidence to avoid summary judgment on the issue of whether defendant used his position of authority to aid in his harassment of plaintiff. Defendant County's motion for summary judgment on plaintiff's Title VII hostile work environment sexual harassment claim is denied. This claim remains for trial.

## B. Constructive Discharge Under Title VII

■ Defendant County contends that plaintiff was not constructively discharged in violation of Title VII. The County asserts that it attempted to address plaintiff's complaints of sexual harassment and that her failure to accept the proposed changes did not constitute constructive discharge.

■ "The test for a constructive discharge claim brought under Title VII is 'whether a reasonable person would view the working conditions as intolerable.'" *Hirschfeld*, 916 F.2d at 580 (quoting *Derr v. Gulf Oil Corp.*, 796 F.2d 340, 343 (10th Cir.1986)).

Plaintiff first reported Spillman's harassment to Gail Crawford on March 10, 1994. On March 15, 1994, plaintiff met with the Sheriff and the Undersheriff to discuss her allegations. Plaintiff left work on March 16, 1994, after an incident in which she learned that Spillman, the Undersheriff, and other members of the department were laughing and talking. Plaintiff assumed they were talking about her and the charges she had lodged against Spillman. Plaintiff confronted the Undersheriff and learned that Spillman was aware of her allegations. Plaintiff's employment with the department was not officially terminated until she was removed from the payroll on July 13, 1994, on the approval of the Board of County Commissioners.

During the time period from March to July, plaintiff's attorney and the County counselor discussed the possibility of plaintiff's return to active employment. Plaintiff did not wish to return to the Sheriff's department unless she did not have to work with Spillman. The County would not grant her request, but offered her a different position in the detention center. It appears that the only action the County took a regarding plaintiff's allegations of sexual harassment is that the Undersheriff counseled Spillman and that plaintiff's sexual battery claim was turned over the KBI for investigation. It does not appear that the Sheriff's department conducted an investigation or that Spillman was disciplined in any manner.

The court concludes that plaintiff has presented sufficient evidence to avoid summary

judgment on the issue of her constructive discharge. Assuming plaintiff's allegations of sexual harassment are true, a jury could conclude that her demand that the Sheriff's department conduct an internal investigation and take some disciplinary action regarding Spillman's behavior prior to her return was reasonable. A genuine issue of material fact remains as to whether a reasonable person would have continued to work under these conditions. Defendant County's motion to dismiss plaintiff's constructive discharge claim is denied.

### C. Section 1983 Claims

Plaintiff asserts claims under 42 U.S.C. § 1983 for violations of her procedural due process and equal protection rights. In her response to the summary judgment motion, plaintiff agrees that dismissal of her due process claim is appropriate. The court, therefore, grants defendant County's motion to dismiss plaintiff's procedural due process claim under § 1983.

Further, defendant County contends that the court also should dismiss plaintiff's equal protection claim brought under § 1983. Defendant County argues that it is not liable for constitutional violations occurring within the Sheriff's department.

Title 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Counties are considered "persons" to which § 1983 applies. *Starrett v. Wadley*, 876 F.2d 808, 818 (10th Cir.1989). "Sexual harassment can violate the Fourteenth Amendment right to equal protection of the laws thus triggering a § 1983 cause of action." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir.1996) (citing *Starrett*, 876 F.2d at 814).

The County is liable under § 1983 for Spillman's sexual harassment of plaintiff only if Spillman's actions can be characterized as representing an official policy or custom of Wyandotte County. *See id.* (citing *Monell v. New York City Dep't of Social Serv.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978)). "Simply employing a tortfeasor is not enough to establish liability under § 1983." *Id.*; *Auriemma v. Rice*, 957 F.2d 397, 399 (7th Cir.1992) ("Municipalities are answerable only for their own decisions and policies; they are not vicariously liable for the constitutional torts of their agents.").

An official policy is created when the county has a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by [a county's] officers." *Id.* (citations and quotations omitted). In the present case, the County has an official policy against sexual harassment. Plaintiff has not presented evidence that Spillman's sexual harassment of her was in accordance with an official policy of the County. *See Starrett*, 876 F.2d at 819–20 (sheriff's sexual harassment of employee was not official policy, but rather was "personal in nature without any indicia of being officially sanctioned or ordered." (citation and quotations omitted)). The court concludes that Spillman's acts cannot be viewed as an official policy of the County under this test.

The County is liable under § 1983 if Spillman's sexual harassment of plaintiff is so pervasive and accepted that it can be considered a "custom" of the County. The Tenth Circuit has explained:

If a violation cannot be characterized as official policy then the [County] can still be held liable if the practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 168, 90 S.Ct. 1598, 1614, 26 L.Ed.2d 142 (1970). In order to establish a custom, the actions must be "persistent and widespread ... practices of [county] officials." *Starrett*, 876 F.2d at 818 (quoting *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036). Furthermore, the official charged with sexual harassment must also have "final policy making author-

ity" with respect to the acts in question as a matter of state law. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1292, 1299–1300, 89 L.Ed.2d 452 (1986). In *Pembaur*, the Court expressly limited municipal liability under § 1983 "where— and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials for establishing final policy with respect to the subject matter in question." *Id.* at 483–84, 106 S.Ct. at 1300.

*Lankford*, 73 F.3d at 286.

In the case at bar, the parties disagree whether Spillman had final policy making authority in the Sheriff's department. It is unnecessary to resolve this dispute because plaintiff has not alleged that Spillman materially changed her employment duties or status in the course of his acts of sexual harassment. *See id.* at 287 (harassment by one official that did not involve terms of employment and that occurred at very specific times and places against certain female employees was "private," rather than "public" acts of sexual harassment and did not create a "custom" of harassment.) Plaintiff has not presented evidence that the sexual harassment was widespread within the Sheriff's department.

The failure of plaintiff to establish a County "custom" of sexual harassment through the acts of Spillman does not end the inquiry. The County could be liable under § 1983 if County officials knew of the sexual harassment and failed to take action to end it. Supervisory liability under § 1983 requires "allegations of personal direction or of actual knowledge and acquiescence." *Id.* (citing *Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir.1992), *cert. denied*, 509 U.S. 923, 113 S.Ct. 3038, 125 L.Ed.2d 724 (1993) (citation and quotations omitted)). Plaintiff contends that the Board of County Commissioners and the Sheriff had actual knowledge of Spillman's harassment of employees because two EEOC charges were filed prior to Spillman's harassment of plaintiff. There is no evidence in the record that County officials took any steps to investigate the EEOC charges. The failure to investigate could be considered acquiescence to the

harassment. *See id.* (steps taken by city officials to investigate and stop harassment of plaintiff was not acquiescence). In addition, plaintiff has raised a question regarding the adequacy of the investigation of her complaints. The County could be liable because its agents, the Board and the Sheriff, failed to undertake an adequate investigation or corrective action.

The court concludes that defendant is not entitled to summary judgment on plaintiff's equal protection claim brought pursuant to § 1983. A genuine issue of material fact remains whether County officials acquiesced to Spillman's actions and created a County policy or custom of sexual harassment. Plaintiff's claim that defendant County violated her constitutional right to equal protection brought pursuant to § 1983 remains for trial.

## D. State Law Claims

### 1. Intentional Infliction of Emotional Distress

Plaintiff alleges a claim of intentional infliction of emotional distress, also known as the tort of outrage. Defendant County argues that it is entitled to summary judgment on plaintiff's outrage claim because its conduct does not rise to the level of extreme and outrageous.

The following four elements must be present to establish a claim of intentional infliction of emotional distress: (1) conduct of defendant must be intentional or in reckless disregard of plaintiff; (2) conduct must be extreme and outrageous; (3) there must be a causal connection between defendant's conduct and plaintiff's mental distress; and (4) plaintiff's mental distress must be extreme and severe. *Taiwo v. Vu*, 249 Kan. 585, 592, 822 P.2d 1024 (1991) (citing *Roberts v. Saylor*, 230 Kan. 289, 292–93, 637 P.2d 1175 (1981)). To constitute extreme and outrageous conduct, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond the bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Saylor*, 637 P.2d at 1179.

■ The tort of outrage is not favored under Kansas law. The courts have been reluctant to extend the tort of outrage cause of action to the employment setting. *Laughinghouse v. Risser,* 754 F.Supp. 836, 843 (D.Kan.1990).

■ Plaintiff bases her claim of outrage against defendant County on a theory of vicarious liability and on the County's failure to investigate and remedy the hostile work environment. Defendant County argues that under Kansas law, they are not vicariously liable for Spillman's acts of harassment and that the County's failure to investigate cannot rise to the level of extreme and outrageous.

■ Generally, an employer is not liable for the intentional torts of an employee unless they are committed while the employee is acting within the scope of his employment or in furtherance of his employer's business, and not with a purpose personal to the employee. *Williams v. Community Drive–In Theater, Inc.,* 214 Kan. 359, syl. 3, 520 P.2d 1296 (1974). The courts have not allowed a case to proceed on a theory of vicarious liability in which the plaintiff was subjected to the harassment of co-workers. *See e.g., Bolden v. PRC Inc.,* 43 F.3d 545, 554 (10th Cir.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 92, 133 L.Ed.2d 48 (1995); *Anspach v. Tomkins Indus., Inc.,* 817 F.Supp. 1499, 1507 (D.Kan.1993), *aff'd,* 51 F.3d 285 (10th Cir. 1995) (table) (employer is not vicariously liable for extreme and outrageous treatment of one employee by another employee); *Braun v. Dillon Companies, Inc.,* 1995 WL 261142, at *14 (D.Kan. Apr. 19, 1995) *Meininger v. Swift–Eckrich, Inc.,* 1995 WL 42700, at *5 (D.Kan. Jan. 6, 1995).

Plaintiff argues that the above cases are distinguishable because Spillman was not her co-worker, but instead had supervisory authority over her. Essentially, plaintiff argues that the County should be liable because its employee, Spillman, used his position of authority to further his extreme and outrageous behavior.

In *Wilkerson v. P.I.A. Topeka, Inc.,* 900 F.Supp. 1418, 1424–25 (D.Kan.1995), the court discussed the possible applicability of Restatement (Second) of Agency § 219(2)(d) in the context of an employer's liability for a supervisor's extreme and outrageous conduct. Section 219(2)(d) provides that an employer may be liable for the torts of an employee if the employee used his apparent authority or agency relationship to commit the tort. As discussed above, § 219(2)(d) most often is utilized to determine liability in the context of hostile work environment sexual harassment. It is unclear whether Kansas courts would extend the liability imposed under § 219(2)(d) to the context of the common law tort of outrage. The court in *Wilkerson* did not resolve the applicability of this theory of recovery because it found that the conduct did not rise to the level of extreme and outrageous. The court notes that at least two cases have considered the possible liability of an employer for the outrageous conduct of supervisory employees. *See Laughinghouse,* 754 F.Supp. at 843 (court allowed outrage claim against employer to survive summary judgment where a supervisor "terrorized" plaintiff); *Parks v. Hayward's Pit, Inc.,* 1993 WL 545231 (D.Kan. Dec. 21, 1993) (plaintiff's outrage claim against employer dismissed where plaintiff failed to allege that her supervisor was acting either in furtherance of the business or in the execution of his authority).

Plaintiff has not directed the court's attention to any Kansas case which has extended liability for the tort of outrage to an employer where the employee was not acting within the scope of his employment or in furtherance of the employer's business. *See Bolden v. PRC Inc.,* 43 F.3d 545, 554 (10th Cir.1994) ("[Plaintiff] has failed to bring to this court's attention any Kansas tort of outrage case in which an employer was liable for the outrageous conduct of an employee."). The Kansas Supreme Court has held that the employer could be liable for the tort of outrage when the employer himself was the party who subjected the plaintiff to vulgar and racist comments. *Gomez v. Hug,* 7 Kan. App.2d 603, 645 P.2d 916 (1982).

As the court stated previously, Spillman's acts of harassment were not within the scope of his employment. Nor has plaintiff alleged *quid pro quo* sexual harassment or that the

harassment was in furtherance of the County's business. The terms and conditions of plaintiff's employment were not affected by Spillman's harassment of plaintiff. The court declines to extend liability to the employer for a supervisor's extreme and outrageous conduct in this context. In contrast to *Laughinghouse,* the facts of this case do not rise to that level of harassment or knowledge on the part of the County. Thus, the court concludes that defendant County is liable only for its own intentional conduct.

Plaintiff contends that defendant County's failure to investigate the alleged harassment following the filing of two EEOC charges and plaintiff's own complaints on March 10, 1994, are sufficient to support a claim of outrage. The court disagrees. The County's lack of investigation is not so extreme and outrageous "as to go beyond the bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Roberts v. Saylor,* 637 P.2d at 1179. The EEOC charges did not specifically name Spillman as the harasser. Plaintiff did not make numerous complaints to officials concerning Spillman's conduct which were ignored. Viewing the facts in the light most favorable to plaintiff, defendant County's failure to investigate under this set of facts does not support a claim of outrage. Defendant County's motion for summary judgment on this claim is granted.

## 2. Negligent Hiring, Retention, and Supervision

■ Plaintiff asserts a claim for negligent hiring, retention, and supervision of Spillman against defendant County. The County contends that it is entitled to summary judgment because Kansas does not recognize the claim in cases in which the employer is sued by an employee rather than by a third party.

The Kansas Supreme Court has recognized claims against employers for negligent hiring, retention, and supervision of an employee. *Plains Resources, Inc. v. Gable,* 235 Kan. 580, 682 P.2d 653 (1984) (negligent hiring and retention); *Kansas State Bank & Trust Co. v. Specialized Transp. Servs., Inc.,* 249 Kan. 348, 819 P.2d 587 (1991) (negligent

supervision). *Plains Resources, Kansas State Bank* and other cases cited by plaintiff

> "all concern situations where the alleged victim of the employee's tortious activity is a member of the public, not another employee of the defendant. It has long been the law in Kansas that an employer is not liable for injuries inflicted by one employee upon another employee when the act causing the injury was not done to promote the employer's business and was no part of the employee's duties."

*Witt v. Roadway Express,* 880 F.Supp. 1455, 1464–65 (D.Kan.1995) (quoting *Anspach v. Tomkins Indus., Inc.,* 817 F.Supp. 1499 (D.Kan.1993)); *see also Beam v. Concord Hosp., Inc.,* 920 F.Supp. 1165, 1168 (D.Kan. 1996) ("Based upon the Kansas case law, the courts of this district have generally limited the theory of negligent supervision or negligent retention to instances where the plaintiff is a third party and not an employee."); *Ulrich v. K–Mart Corp.,* 858 F.Supp. 1087, 1094 (D.Kan.1994), *aff'd,* 70 F.3d 1282 (10th Cir.1995) (table).

The court concludes that Kansas would not recognize a cause of action for negligent hiring, retention, and supervision brought by a plaintiff employee against a defendant employer for the tortious acts of another employee. Defendant County's motion for summary judgment on this claim is granted.

### E. Punitive Damages

In her amended complaint, plaintiff sought punitive damages from defendant County on all claims. Pursuant to 42 U.S.C. § 1981a(b)(1), plaintiff agrees that she is not entitled to recover punitive damages from a political subdivision on her civil rights claims. Defendant County's motion for summary judgment on plaintiff's request for punitive damages from the County is granted.

### IV. Conclusion

This case will proceed to trial on plaintiff's claims against defendant County for hostile work environment sexual harassment under Title VII and for violation of plaintiff's equal protection rights brought pursuant to 42 U.S.C. § 1983.

IT IS, THEREFORE, BY THE COURT ORDERED that defendants' motion for partial summary judgment (Doc. 62) is granted in part and denied in part as set forth in this memorandum and order.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**