**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**Filed 1/4/96**

**TENTH CIRCUIT**

---

LINDA K. LANKFORD; NANCY CALVERY,    )
    )
    Plaintiffs-Appellants,    )
    )
v.    )    No. 95-6027
    )
CITY OF HOBART; HOBART POLICE DEPART-    )
MENT; QUIRINO MEDRANO, JR., individually    )
and as City Marshal and Police Chief of the City of    )
Hobart,    )
    )
    Defendants-Appellees.    )

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. CIV-92-164-H)**

---

Tom R. Stephenson, Watonga, Oklahoma, for Plaintiffs-Appellants.

Andrew W. Lester (Shannon F. Davies with him on the briefs) of Lester & Bryant, P.C., Oklahoma City, Oklahoma, for Defendants-Appellees.

---

Before **MOORE, BRORBY** and **EBEL**, Circuit Judges.

---

**BRORBY**, Circuit Judge.

---

Plaintiffs Linda Lankford and Nancy Calvery brought charges against the City of Hobart alleging they were subjected to sexual harassment and discrimination by former Police Chief Quirino Medrano, Jr., in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and 42 U.S.C. § 1983 as well as other federal and state law claims. A magistrate judge for the United States District Court for the Western District of Oklahoma granted defendant's motion for summary judgment dismissing all of plaintiffs' claims. Plaintiffs now appeal the dismissal of their § 1983 and Title VII claims against the City of Hobart. We exercise jurisdiction pursuant to 28 U.S.C. § 636(c)(3) and affirm the magistrate judge's order.[1]

I

Plaintiffs allege while employed as dispatchers for the Hobart Police and Fire Departments they were subjected to sexual harassment and discrimination by Mr. Medrano, the police chief and city marshal, which created a hostile and abusive work environment. Such discrimination consisted of unwelcome sexual advances, obscene remarks, and inappropriate physical touching of their bodies. They further allege when they rebuked his advances Mr. Medrano threw temper tantrums, slandered their reputations, began spying on

---

[1]  Plaintiffs also brought charges against Mr. Medrano. On May 16, 1994, this court affirmed in part and reversed in part the magistrate judge's order. On June 14, 1994, this court withdrew and vacated its May 16 opinion and reversed the dismissal of plaintiffs' § 1983 claim against Mr. Medrano but declined to exercise jurisdiction over the claims against Hobart. *See Lankford v. City of Hobart*, 27 F.3d 477 (10th Cir. 1994). On remand, upon the joint stipulation and motion of plaintiffs and Mr. Medrano, the plaintiffs' cause against Mr. Medrano was dismissed with prejudice.

2

them, and threatened to fire them. Plaintiffs contend Hobart city officials knew or should have known of Mr. Medrano's actions and failed to take proper remedial measures. On appeal, plaintiffs argue summary judgment as to their Title VII and § 1983 claims should not have been granted in favor of Hobart "because triable issues exist and the law was incorrectly applied."

The magistrate judge dismissed plaintiffs' § 1983 claims after finding "Medrano had no authority to make any policy on behalf of the City including terms or conditions of employment and any acts of sexual harassment were personal in nature without being officially condoned or sanctioned." The court also found there was no evidence of a custom or widespread practice of sexual harassment. Regarding the Title VII claims, the court found Mr. Medrano's sexual harassment was not so pervasive as to create a hostile work environment. The court also noted there was no evidence that plaintiffs had been denied any tangible work benefits as a result of the sexual harassment.

We review a motion for summary judgment de novo. *Considine v. Newspaper Agency Corp.*, 43 F.3d 1349, 1356 (10th Cir. 1994). Under Fed. R. Civ. P. 56(c) a motion for summary judgment is appropriate only where it is found "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The district and appellate courts are required to draw all reasonable inferences in the light most

favorable to the nonmovant.  *Ball v. Renner*, 54 F.3d 664, 665 (10th Cir. 1995).

II

We will first address plaintiffs' § 1983 claims.  Title 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Municipalities, such as Hobart, are considered "persons" to whom § 1983 liability applies. *Monell v. New York City Dept. of Social Serv.*, 436 U.S. 658, 690 (1978).  Sexual harassment can violate the Fourteenth Amendment right to equal protection of the laws thus triggering a § 1983 cause of action.  *Starrett v. Wadley*, 876 F.2d 808, 814 (10th Cir. 1989).

Notably, even if we find Mr. Medrano's actions violated plaintiffs' rights to equal protection, the City of Hobart can be held liable under § 1983 only if Mr. Medrano's actions can be characterized as representing an official policy or custom of the City of Hobart.  In *Monell,* the Supreme Court held "it is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983."  436 U.S. at 694.  Simply employing a tortfeasor is not enough to establish liability under § 1983.  *Id.* at 691.

4

In order to warrant liability, a municipal policy must be a "'policy statement, ordinance, regulation, or decision officially adopted and promulgated by [a municipality's] officers.'" *Starrett*, 876 F.2d at 818 (quoting *Monell,* 436 U.S. at 690). In the case at bar, there is no allegation nor evidence suggesting the City of Hobart had an official policy favoring sexual harassment. In fact, there is evidence the City of Hobart had a written city policy expressly forbidding it.

If the violation cannot be characterized as official policy then the City of Hobart can still be held liable if the practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 168 (1970). In order to establish a custom, the actions must be "persistent and widespread ... practices of [city] officials." *Starrett*, 876 F.2d at 818 (quoting *Monell*, 436 U.S. at 691). Furthermore, the official charged with sexual harassment must also have "final policy making authority" with respect to the acts in question as a matter of state law. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (plurality). In *Pembaur*, the Court expressly limited municipal liability under § 1983 "where--and only where--a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id*. at 483-84.

The question is thus whether Mr. Medrano's acts can be characterized as a deliberate

choice of the city and whether he had final policy making authority for the City of Hobart. The City of Hobart is an aldermanic form of government. Under this system, the city mayor has all final policy making decision power and control regarding the hiring and firing of city employees. Okla. stat. tit. 11, § 9-105 (1995). Mr. Medrano served in a dual role. He was elected city marshal by the population and then appointed chief of police by the City Council. We do not have Mr. Medrano's job description before us, but we do know the aldermanic form of government did not authorize him to hire or fire employees nor to make official policy as a matter of state law.

Mr. Medrano's ability to hire or fire employees is not determinative in a § 1983 claim as was shown in our *Starrett* decision. The defendant in *Starrett*, an elected deputy county assessor, was charged with sexually harassing a female county assessor by making unwanted sexual advances, inappropriate physical contact and obscene gestures. Although *Starrett* involved only one plaintiff, she presented evidence that the same defendant had sexually harassed other female employees. She also introduced evidence that he retaliated against her for rejecting his advances, culminating in her termination. *Starrett*, 876 F.2d at 819. In *Starrett*, the defendant had the authority to hire and fire the plaintiff and the county was held liable for the plaintiff's wrongful termination. However, the county was not held responsible for the defendant's sexual harassment under § 1983 because "isolated and sporadic acts of sexual harassment directed at a few specific female members of his staff" did not amount to

a county custom. *Id.* at 820. The *Starrett* court noted that there was "no indication that sexual harassment by others in the office was tolerated or occurred" or that the defendant materially altered the plaintiff's employment duties or status prior to the termination. *Id.*

In this case, plaintiffs have also not alleged any sexual harassment in the office other than that committed by Mr. Medrano at very specific times and places against certain female employees. This case exemplifies a situation where the defendant was committing private, rather than public, acts of sexual harassment. There is also no indication that Mr. Medrano materially changed their employment duties or status as part of his harassment. The factual dispute regarding his ability to hire and fire the plaintiffs is irrelevant because neither plaintiff has alleged wrongful termination or that keeping their jobs was contingent on their acquiescence to Mr. Medrano's sexual advances. Ms. Calvery does allege that he demoted her from chief dispatcher to dispatcher. However, this "demotion" resulted in no change in her job conditions or salary. Ms. Calvery was terminated by the City Council on Mr. Medrano's recommendation. Although there is some dispute regarding the reasons for the termination, when Ms. Calvery challenged her termination the City Council provided her with a post-termination hearing, at which no mention of sexual harassment was made by Ms. Calvery, and she was reinstated to her former position with compensation for missed pay, subject to a ninety-day probationary period.

7

Plaintiffs also allege that Hobart city officials knew or should have known of Mr. Medrano's conduct yet failed to take appropriate measures. In *Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992), *cert. denied*, 113 S. Ct. 3038 (1993), we adopted the Third Circuit's test for supervisory liability under § 1983 as requiring "allegations of personal direction or of actual knowledge and acquiescence." *Id.* (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990)). Here, plaintiffs have not made any allegations of personal direction by city officials. Plaintiffs do claim, however, the City had actual knowledge of Mr. Medrano's actions. Ms. Calvery states she told the Mayor of Hobart of Mr. Medrano's actions after she was terminated and prior to her termination hearing. Although the Mayor denies Ms. Calvery complained to him of sexual harassment, after the alleged conversation occurred, Ms. Calvery was given a due process hearing, was reinstated to her position and the sexual harassment stopped. The Mayor does not dispute that Ms. Lankford told him of Mr. Medrano's actions. Rather than acquiescing to the conduct, the Mayor immediately suspended her with pay so he could conduct an investigation. Finding inconclusive results regarding her claims, she was reinstated, the dispatcher's office was moved and her schedule was changed so she would not come into contact with Mr. Medrano. Ms. Lankford admits that after these steps the harassment stopped. She does claim, however, that she was demoted from chief dispatcher to dispatcher. But as we noted earlier, such a change was merely nominal. Because Hobart did not acquiesce to Mr. Medrano's actions but rather took steps that resulted in preventing further

8

harassment and because Mr. Medrano's conduct constitutes neither a city policy nor custom the district court properly dismissed plaintiff's § 1983 claims.[2]

## III

We now turn to plaintiffs' Title VII claims.[3] Because the 1991 Civil Rights Act does not apply retroactively, plaintiffs are governed by pre-1991 Civil Rights Act law. *Landgraf v. USI Film Products*, ___ U.S. ___, ___, 114 S. Ct. 1483, 1508 (1994). Under the pre-1991 Civil Rights Act plaintiffs are "restricted to the traditional equitable remedies of reinstatement, back pay, and front pay as well as declaratory and injunctive relief." *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1347 (10th Cir. 1994).

Ms. Calvery is still employed as a dispatcher for the City of Hobart and has no claim for reinstatement. She also has made no claim for front pay or any type of declaratory or injunctive relief. In fact, declaratory or injunctive relief would be inappropriate in this case because Mr. Medrano is no longer a city employee nor city official. Ms. Calvery did make

---

[2] Plaintiffs' failure-to-train allegations against the City of Hobart lack merit. Under *City of Canton v. Harris*, 489 U.S. 378, 388 (1989), in order to prevail the plaintiffs must show that the City of Hobart's failure to train rose to the level of "deliberate indifference." Plaintiffs have made no such claim nor provided any evidence on this issue.

[3] The magistrate judge dismissed Ms. Calvery's Title VII claims as barred by the statute of limitations because she did not bring her claims within 300 days after the alleged discriminatory practice. The magistrate judge, however, failed to consider the possibility of an equitable tolling as provided in *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982). We will not address the merits of an equitable tolling claim because we find Ms. Calvery's Title VII claims fail to allege an adequate remedy.

9

a vague claim that she was not fully compensated for all the back pay she missed during the period between her dismissal and her reinstatement. But there were no charges that this dismissal was based on violations of Title VII and those damages are therefore not applicable to this cause of action.

Ms. Lankford admits she quit her position due to personality conflicts with the new chief of police, scheduling problems and overall job dissatisfaction. She also has not made any claims for back pay, front pay, declaratory relief, or injunctive relief. Plaintiffs have claimed they were denied overtime payments. However, neither is able to document nor even estimate how much overtime they are owed, why they were denied such payments or whether any dispatchers ever received overtime. Furthermore, plaintiffs do not dispute a 1991 Department of Labor investigation which found overtime was owed to certain City of Hobart employees. Neither plaintiff was found to be owed overtime by this investigation.

Therefore, we need not address the merits of plaintiffs' Title VII claims because the lack of an appropriate remedy moots their claims for relief. A claim is moot when the controversy no longer "touch[es] the legal relations of parties having adverse legal interests" in the outcome of the case. *DeFunis v. Odegaard*, 416 U.S. 312, 317 (1974) (per curiam). "The legal interest must be more than simply the satisfaction of a declaration that a person was wronged." *Cox*, 43 F.3d at 1348. In this case, because no legal remedies are available

10

to plaintiffs a verdict in their favor would do little more than provide them with emotional satisfaction. Such satisfaction is not an appropriate remedy under these circumstances. *See also Ashcroft v. Mattis*, 431 U.S. 171, 172-73 (1977) (per curiam) (holding that a claim is moot when the primary interest is the emotional satisfaction from a favorable ruling).

For the reasons set forth above, we **AFFIRM** the magistrate judge's grant of summary judgment to the City of Hobart regarding plaintiffs' § 1983 and Title VII claims.