Tammy S. VAN DOMELEN, Plaintiff,

v.

MENOMINEE COUNTY and Henry
E. Gurosh, Defendants.

No. 2:95–CV–64.

United States District Court,
W.D. Michigan,
Northern Division.

June 28, 1996.

Thomas P. Schwaba, Faller, Pleger, Wilson & Schwaba, SC, Marinette, WI, for Tammy S. Van Domelen.

Dennis P. Mikko, Cummings, McClorey, Davis, Acho & Tremp, PC, Traverse City, MI, for County of Menominee.

Steven L. Barney, Laura M. Dinon, Plunkett & Cooney, PC, Petoskey, MI, Lyle Andrew Peck, Sault Ste. Marie, MI, for Henry E. Gurosh.

### *OPINION*

QUIST, District Judge.

This is a civil action wherein plaintiff, Tammy Van Domelen, filed a complaint containing four counts against Menominee County ("Menominee") and Henry Gurosh, who was formerly the Menominee County Clerk and Register of Deeds. Count I is a claim brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e,

*et seq.* Count II is a claim under 42 U.S.C. § 1983. Count III is a claim under Michigan's Elliott–Larsen Civil Rights Act, M.C.L. § 37.2101, *et seq.* Count IV is a claim for breach of employment contract. Plaintiff's claims arise out of defendant Gurosh's alleged sexual harassment of plaintiff while plaintiff worked as a deputy county clerk in the Menominee County Clerk's Office. This matter is before the Court on defendant Menominee's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.

## Facts

Plaintiff worked as a deputy county clerk in the Menominee County Clerk's Office from January 8, 1990, to October 16, 1992. When she was interviewed for the position, defendant Gurosh conducted the interviews. After consulting with his Chief Deputy Clerk, Georgia Johnson, Gurosh decided to hire plaintiff. On her W–2 forms, plaintiff's employer is identified as "County of Menominee." Plaintiff received her salary and benefits from Menominee County. A written contract between the County Employees Association, of which plaintiff was a member, the Menominee County Board of Commissioners ("Board"), and certain elected officials set the terms of employment. The contract designates the Board and elected officials as "co-employers." Defendant Gurosh, however, refused to sign this contract.

Plaintiff alleges that between March 1991, and October 1992, defendant Gurosh frequently directed lewd and suggestive comments of a sexual nature at plaintiff. Such alleged conduct includes: telling plaintiff to dress in a revealing fashion; requesting information regarding plaintiff's sexual relations with her husband; telephoning plaintiff at home; and, on one occasion, attempting to embrace plaintiff.

Plaintiff alleges that the Board was made aware of defendant Gurosh's conduct towards plaintiff by its secretary, Kathleen Hupy, and Barbara Morrison, a Board member. Plaintiff claims that the Board failed to do anything about the situation.

Menominee states that plaintiff did not inform the County of the alleged harassment until she spoke with county administrator Kevin Hamann in September or October of 1992. Hamann testified that he first learned of the alleged sexual harassment on September 17, 1992. On October 15, 1992, the day before plaintiff quit her employment, she provided a letter to Hamann requesting that an investigation be undertaken. Menominee claims that Hamann discussed plaintiff's situation with Dan Hass, county prosecutor, when he became aware of plaintiff's allegations. Soon afterward, an investigation of the situation was commenced. As a result of this investigation, the Board mailed a letter dated December 11, 1992, which requested that Gurosh cease his allegedly harassing behavior.

## Standard for Summary Judgment

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. The rule requires that the disputed facts be material. Material facts are facts which are defined by substantive law and are necessary to apply the law. A dispute over trivial facts which are not necessary in order to apply the substantive law does not prevent the granting of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The rule also requires the dispute to be genuine. A dispute is genuine if a reasonable jury could return judgment for the nonmoving party. *Id.* This standard requires the non-moving party to present more than a scintilla of evidence to defeat the motion. The summary judgment standard mirrors the standard for a directed verdict. The only difference between the two is procedural. Summary judgment is made based on documentary evidence before trial, and directed verdict is made based on evidence submitted at trial. *Anderson,* 477 U.S. at 250–51, 106 S.Ct. at 2511.

A moving party who does not have the burden of proof at trial may properly support a motion for summary judgment by showing the court that there is no evidence to support the non-moving party's case. *Cel-*

*otex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the motion is so supported, the party opposing the motion must then demonstrate with "concrete evidence" that there is a genuine issue of material fact for trial. *Id.; Frank v. D'Ambrosi,* 4 F.3d 1378, 1384 (6th Cir.1993). The court must draw all inferences in a light most favorable to the non-moving party, but the court may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle,* 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

### *Standard for Dismissal*

■ An action may be dismissed if the complaint fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The moving party has the burden of proving that no claim exists. Although a complaint is to be liberally construed, it is still necessary that the complaint contain more than bare assertions of legal conclusions. *Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236, 1240 (6th Cir.1993). All factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the non-moving party. 2A James W. Moore, *Moore's Federal Practice,* ¶ 12.07[2.5] (2d ed. 1991). The Court need not, however, accept unwarranted factual inferences. *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987). Dismissal is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

Dismissal is also proper if the complaint fails to allege an element necessary for relief or "if an affirmative defense or other bar to relief is apparent from the face of the complaint, such as the official immunity of the defendant...." 2A James W. Moore, *Moore's Federal Practice,* ¶ 12.07[2.5] (2d ed. 1991).

In practice, "a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory."

*Allard,* 991 F.2d at 1240 (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988)).

### *Discussion*

### I. Breach of Employment Contract

■ Plaintiff claims that not only was she employed by the County, but that the Menominee County Personnel Manual set the terms and conditions of her employment. Plaintiff contends that because Section N of the Manual states that the Board does not condone sexual harassment in the workplace, the Board had a contractual obligation to protect her from sexual harassment in the county clerk's office. This Court holds that plaintiff's breach of contract claim is preempted by the Elliott–Larsen Civil Rights Act. *Hartleip v. McNeilab, Inc.,* 83 F.3d 767, 778 (6th Cir.1996). In *Hartleip,* the Sixth Circuit noted that under Michigan law,

When a statute creates a new right or imposes a new duty having no counterpart in the common law, the remedies provided in the statute for violation are exclusive and not cumulative. Correlatively, a statutory remedy for enforcement of a common-law right is deemed only cumulative.

*Id.* (quoting *Covell v. Spengler,* 141 Mich. App. 76, 79, 366 N.W.2d 76, *appeal denied,* 422 Mich. 977, 374 N.W.2d 420 (1985)). Michigan does not provide a common law remedy for discrimination in employment. *Hartleip,* 83 F.3d at 778 (citing *Pompey v. General Motors Corp.,* 385 Mich. 537, 552, 189 N.W.2d 243 (1971)). "Therefore, because the remedy sought by [plaintiff] did not exist at common law, and indeed because her contract claim as framed by her complaint is premised on duties recognized in the [Elliott–Larsen Civil Rights Act], her exclusive remedy lies in an action under the [Elliott–Larsen Civil Rights Act]." *Hartleip,* 83 F.3d at 778. Thus, plaintiff's claim for breach of contract must be dismissed pursuant to pursuant to Fed.R.Civ.P. 12(b).

## II. Menominee County's Liability for Henry Gurosh's Alleged Acts

This Court must now decide if Menominee County can be held liable for defendant Gurosh's actions under either Title VII or the Elliott–Larsen Civil Rights Act. Under Title VII, an employer's liability for the acts of an employee or another third party is necessarily "predicated on some theory of agency." *Rowinsky v. Bryan Ind. Sch. Dist.,* 80 F.3d 1006, 1010 n. 11 (5th Cir.1996); *see Kauffman v. Allied Signal, Inc., Autolite Div.,* 970 F.2d 178, 183 (6th Cir.1992) (citing *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 72, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986) for the proposition that "courts should base liability determinations [under Title VII] on agency principles"), *cert. denied,* 506 U.S. 1041, 113 S.Ct. 831, 121 L.Ed.2d 701 (1992). Due to the similarity between Michigan and federal civil rights statutes, Michigan courts consider federal precedent on analogous questions to be highly persuasive. *Langlois v. McDonald's Restaurants of Michigan, Inc.,* 149 Mich.App. 309, 312, 385 N.W.2d 778 (1986); *Falls v. Sporting News Pub. Co.,* 834 F.2d 611, 613 (6th Cir.1987) (comparing the Elliott–Larsen Civil Rights Act to the federal Age Discrimination in Employment Act ("ADEA")). As such, this Court's analysis of this issue is once again virtually identical under the Elliott–Larsen Civil Rights Act.

As evidence of Menominee's ability to control Gurosh, plaintiff argues that the Board could have sent a warning letter to Gurosh long before plaintiff was forced to quit her job. Instead, the County informed Gurosh in a letter dated December 11, 1992, two months after plaintiff quit, that his actions could place the County in "financial jeopardy," even though the County believed that the Board of Commissioners "may have limited authority" over Gurosh due to his status as an elected official. Plaintiff also notes that the Board could have required Gurosh to write a report under oath on any subject connected with the duties to that office under M.C.L. § 46.11(n). Failure to make such a report may result in the Board declaring the office vacant by a two-thirds (⅔'s) vote.

This Court finds that plaintiff has brought forth no evidence that the Board exercised any real control over the actions of Henry Gurosh. Simply writing a warning letter does not mean that Gurosh was compelled in any way to comply with the Board's warnings. By its express terms, the letter indicated that the Board believed that it had little formal authority over Gurosh due to his status as an elected official. It was certainly reasonable for the County to note that Gurosh's alleged activity might put the County in financial jeopardy because plaintiff has since named the County as a party to a civil lawsuit. Defending against a lawsuit may be an expensive proposition whether one is a proper party to the lawsuit or not. Furthermore, requesting a report does not demonstrate any control. Regardless of the content of his report, Gurosh's office could not have been deemed vacated if he simply complied with such a request. Finally, while a county clerk may be removed from office when "guilty of official misconduct" under M.C.L. § 168.208, a circuit judge determines when such removal is proper, not the Board of Commissioners. Thus, summary judgment must be granted regarding plaintiff's Title VII and Elliott–Larsen claims pursuant to Fed.R.Civ.P. 56.

## III. 42 U.S.C. § 1983

Plaintiff also alleges that defendant Menominee violated her constitutional rights under the Equal Protection Clause of the Fourteenth Amendment, and by extension 42 U.S.C. § 1983, by discriminating against her on the basis of her sex. In short, plaintiff claims that defendant Gurosh's alleged acts of sexual harassment rose to the level of a constitutional tort and that due to Gurosh's status as a person with final policy making authority, these acts represented the official policy of the County. Title 42 U.S.C. § 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be lia-

ble to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Political subdivisions are considered "persons" to whom § 1983 liability applies. *Monell v. New York City Dept. of Social Serv.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978) (municipalities); *Starrett v. Wadley*, 876 F.2d 808, 814 (10th Cir.1989) (counties). Such governmental entities may be held liable for unconstitutional policies. In order for liability to be imposed, the government's policy must be a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690, 98 S.Ct. at 2036. Furthermore, under certain circumstances, sexual harassment may constitute a violation of the Fourteenth Amendment right to equal protection of the laws, thereby triggering a § 1983 cause of action. *Lankford v. City of Hobart*, 73 F.3d 283, 286–87 (10th Cir.1996) (city sued for actions of police chief); *cf. United States v. Lanier*, 73 F.3d 1380, 1393 (6th Cir.1996) (in holding that "sexual assaults may not be prosecuted as violations of a constitutional substantive due process right to bodily integrity," the court noted that "a sexual assault raising an equal protection gender discrimination claim may present an entirely different case").

In the instant case, however, there is no allegation that Menominee County had an official policy favoring sexual harassment. Rather, Menominee's official pronouncements, such as the Personnel Manual, expressly forbade such activity. Even though the alleged harassment cannot be characterized as official policy, defendant Menominee can still be held liable if the alleged practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 168, 90 S.Ct. 1598, 1614, 26 L.Ed.2d 142 (1970). In order to establish a custom, the actions must be " 'persistent and widespread ... practices of [county] officials.' " *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036 (quoting *Adickes*, 398 U.S. at 167–68, 90 S.Ct. at 1613). Plaintiff, however, premises her § 1983 claims solely on the acts of a single official, defendant Gurosh. As such, there is no evidence of a county-wide custom of sexu-

al harassment. Plaintiff claims that Menominee is liable because Gurosh was an official policymaker, and his actions therefore constituted county policy.

In *Pembaur v. City of Cincinnati*, the Supreme Court held that a warrantless search gave rise to municipal liability because the County Prosecutor was acting as a "final decisionmaker" when he ordered the illegal search. 475 U.S. 469, 484–85, 106 S.Ct. 1292, 1301, 89 L.Ed.2d 452 (1986). In ruling thusly, the Court explained that if a government official, who possesses final policy making authority in a certain area, makes a decision—even if it is specific to a particular situation—that decision constitutes municipal policy for § 1983 purposes. *Id.* at 481, 106 S.Ct. at 1299. Such actions may properly be understood as the acts of the political subdivision, which the government "officially sanctioned or ordered." *Id.* at 480, 106 S.Ct. at 1298.

■■■ Municipal or county liability, however, is strictly limited to those decisions made by a policymaker in his policy-making capacity. *Id.* at 483, 106 S.Ct. at 1300 (municipal liability may be imposed under § 1983 "where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."). Holding a county liable for any and all unconstitutional acts committed by a person with final policy-making authority would simply reinstate the doctrine of respondeat superior with respect to § 1983, a position which has been flatly rejected by the Supreme Court. *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037–38 ("it is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983"); *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988) (plurality) (one of the guiding principles behind municipal liability is that municipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible). The question is thus whether defendant Gurosh's alleged "acts can be

characterized as a deliberate choice of the [county] and whether he had final policy making authority" for Menominee County. *Lankford v. City of Hobart,* 73 F.3d 283, 286 (10th Cir.1996).

In *Lankford,* the Tenth Circuit distinguished the inappropriate conduct a policymaker might commit as an ordinary citizen from the inappropriate conduct which a policymaker commits which may be properly attributed to the political subdivision he represents. In a case with facts similar to the instant case, plaintiffs Linda Lankford and Nancy Calvery charged the political subdivision—in that case, the city of Hobart—with violations of § 1983 arising out of the sexual harassment they suffered at the hands of their boss, who had been elected chief of police. The *Lankford* court held that because "plaintiffs have not alleged any sexual harassment in the office other than that committed by defendant at very specific times and places against certain female employees," the case "exemplifies a situation where the defendant was committing private, rather than public, acts of sexual harassment." *Id.* at 287; *see also Starrett v. Wadley,* 876 F.2d 808, 820 (10th Cir.1989) ("isolated and sporadic acts of sexual harassment directed at a few specific female [staff] members" does not amount to a county custom or policy). This Court believes that *Lankford* is directly on point. Defendant Gurosh's alleged actions were not taken within his role as a policy making official, but were rather isolated acts taken in a private capacity which cannot be attributed to the county.[1]

■ Plaintiff also alleges that Menominee County officials knew or should have known of defendant Gurosh's conduct, but failed to take appropriate action. In the Sixth Circuit, supervisory liability cannot be imposed "unless it is shown 'that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716, 727 (6th Cir.1996) (quoting *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th

Cir.1984), *cert. denied,* 469 U.S. 845, 105 S.Ct. 156, 83 L.Ed.2d 93 (1984)). Plaintiff, however, has made no allegations of encouragement or personal direction by county officials. Rather, plaintiff claims that certain county officials had actual knowledge of defendant Gurosh's actions. In the Sixth Circuit, however, mere knowledge of the alleged harassment does not support a finding of supervisory liability under § 1983. *Id.* at 727–28. Thus, summary judgment must be granted regarding plaintiff's 42 U.S.C. § 1983 claims pursuant to Fed.R.Civ.P. 56.

For the foregoing reasons, plaintiff's claims against defendant Menominee County will be dismissed. An Order consistent with this Opinion will be entered.

### ORDER

In accordance with the Opinion issued on this date,

**IT IS HEREBY ORDERED** that defendant Menominee County's "Motion to Dismiss or, in the Alternative, Motion for Summary Judgment" (docket no. 36) is **GRANTED.** Defendant Menominee County is **DISMISSED** as a party to this case.

---

1. Whether Gurosh was, in fact, a policymaking official is an issue decided pursuant to state law. *Jett v. Dallas Ind. Sch. Dist.,* 491 U.S. 701, 737, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989).

Because this determination is not necessary to support this Court's opinion, this Court will decline to reach the issue.