**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 23 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

N. M. GOFF,

      Plaintiff - Appellant,

    v.

CITY OF TULSA, a municipal
corporation,

      Defendant - Appellee.

No. 98-5240

(N.D. Oklahoma)

(D.C. No. 97-CV-563-J)

---

**ORDER AND JUDGMENT** [*]

---

Before **BALDOCK** , **REAVLEY** ,[**] and **BRORBY** , Circuit Judges.

N.M. Goff appeals the summary judgment entered against her on the civil

rights claim she brought against the City of Tulsa under 42 U.S.C. § 1983.

Because we agree with the district court that Goff did not raise a material issue of

fact sufficient to defeat summary judgment on the issue of municipal liability, we

affirm.

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]Honorable Thomas M. Reavley, United States Senior Circuit Judge for the
Fifth Circuit, sitting by designation.

Summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under modern summary judgment practice "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted).

A municipality does not incur liability under § 1983 "unless action pursuant to official municipal policy of some nature caused a constitutional tort." Monell v. Department of Soc. Servs., 436 U.S. 658, 691 (1978). A municipality is liable "only where the municipality itself causes the constitutional violation at issue." City of Canton v. Harris, 489 U.S. 378, 385 (1989). The violation must be caused by a municipal policy or custom reflecting a deliberate or conscious choice by city policymakers, id. at 389, or an official with final policymaking authority, see Randle v. City of Aurora, 69 F.3d 441, 447 (10th Cir.1995). Goff did not show that the officers had final policymaking authority.

As for the issue of municipal policy or custom, a policy "must be a policy statement, ordinance, regulation, or decision officially adopted and promulgated by a municipality's officers." Lankford v. City of Hobart, 73 F.3d 283, 286 (10th

Cir. 1996) (brackets, internal quotation marks omitted). Goff directs us to written procedure 31-114 C of the Tulsa police department as a written procedure which allows for custodial arrest of a juvenile for a traffic offense. As we read one written version of this procedure in the record, juveniles committing "pre-set fine" violations receive a citation. For other traffic violations, the juvenile is "booked to municipal court." We do not read this procedure as calling for an arrest, only a court date. Another copy of the procedure states that "whenever possible, juveniles will be issued citations in lieu of arrest." This language implies that an arrest is warranted in some cases.

Citing Glidden v. Higgs, 839 P.2d 680 (Okla. Ct. App. 1992), Goff argues that a traffic offense by a juvenile is not a crime under Oklahoma law and therefore cannot constitutionally justify an arrest. However, arresting a juvenile after a stop for a traffic violation is not unconstitutional per se. There are obviously some circumstances where an officer can make an arrest after pulling over an automobile for a traffic violation. If, for example, after a traffic stop the officer is assaulted, contraband is found in plain view or pursuant to a consensual search, or the officer recognizes the juvenile as the subject of an arrest warrant on another charge, an arrest at that point is constitutional. Goff therefore does not show that the procedure sanctions unconstitutional conduct.

Goff also points to procedure 31-121 B, which states that for certain minor offenses a juvenile must be released to her parents, but that "[i]f the parents cannot be located, the juvenile should be taken to the Youth Services of Tulsa (YST) shelter." The next section states that "[i]n the case of an arrest for traffic offenses only, if the parents cannot be notified, attempt to locate a responsible adult relative to release the juvenile to." As we understand Goff's argument, this procedure contemplates unconstitutional arrests because (1) a traffic offense is not a crime under Oklahoma law, and hence cannot constitutionally justify an arrest, (2) the procedure calls for an arrest (i.e. the taking of the juvenile to the YST shelter) for a traffic violation if the parents or another adult relative cannot be located.

However, even if the city has an unconstitutional practice of arresting juveniles for traffic offenses, such a policy cannot be described as the "'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Board of County Comm's v. Brown, 117 S. Ct. 1382, 1388 (1997). Even if Goff was issued a citation for not wearing a seat belt, which is a traffic violation, and even if as she claims she was arrested (even though she admits that she was released to her grandmother), she did not show that procedure 31-121 B

-4-

was the moving force behind her alleged illegal search and arrest. The automobile was stopped for an expired tag. Goff, a passenger, was handcuffed and searched because the officer saw her trying to hide something, which turned out to be marijuana, in her pants. She has not shown that she was handcuffed and searched illegally because the officers pursued a written policy allowing for such conduct.

Absent an official policy, a municipality may be held liable if the unconstitutional practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." Lankford, 73 F.3d at 286 (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 168 (1970)). In order to establish a custom, the actions of the municipal employees must be "continuing, persistent and widespread." Gates v. Unified Sch. Dist. No. 449, 996 F.2d 1035, 1041 (10th Cir. 1993). In addition, the plaintiff must show deliberate indifference to or tacit approval of such misconduct by policymaking officials after notice of such misconduct. Id. Goff did not present sufficient evidence of an illegal practice, known to policymaking officials, "so permanent and well settled" or so "continuing, persistent and widespread" for a jury to impose liability on the city. Goff points to evidence that the two officers were not disciplined after an internal affairs investigation, but this evidence does not demonstrate a widespread custom of the city to violate the Fourth Amendment rights of citizens. Goff also cites

United States v. Davis, 94 F.3d 1465 (10th Cir. 1996), where Tulsa police officers were found to have committed an unlawful investigative detention. Again, the one incident described in this case is not enough to establish a widespread custom.

Goff also cites trial testimony which she claims shows that the officers who handcuffed and searched her have on other occasions performed pat down searches and handcuffed individuals without reasonable suspicion. Again, we do not believe that this evidence rises to the level of proof of illegal actions so permanent and well settled or so continuing, persistent and widespread as to constitute a city custom that was known to policymaking officials. Moreover, this evidence was not presented in response to the summary judgment motion. Goff did not file a request to stay resolution of the summary judgment motion in order to allow further discovery, in compliance with Fed. R. Civ. P. 56(f), nor does she raise as a separate point of error that the district court should have reversed its interlocutory summary judgment and submitted the federal claim to the jury in light of the trial testimony. The only issue she presents on appeal is whether the district court erred in granting the summary judgment motion in the first instance. Our review of the summary judgment is therefore limited to the evidence presented in support of and opposition to the summary judgment motion.

AFFIRMED.

ENTERED FOR THE COURT

Thomas M. Reavley
Senior Circuit Judge