*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MEKO MOORE,

      Plaintiff-Appellant,

v

COUNTY OF INGHAM,

      Defendant-Appellee.

UNPUBLISHED
July 2, 2019

No. 341905
Ingham Circuit Court
LC No. 16-000669-CD

Before: TUKEL, P.J., and SERVITTO and RIORDAN, JJ.

PER CURIAM.

In this Elliott-Larsen Civil Rights Act (ELCRA) action, plaintiff appeals as of right the trial court order granting summary disposition in favor of defendant pursuant to MCR 2.116(C)(10). We affirm the trial court's order, albeit on other grounds.[1]

## I. BACKGROUND FACTS

Plaintiff, an African-American woman, was employed as a deputy at the Ingham County Sheriff's Office (ICSO). She was assigned as a corrections officer at the Ingham County Jail. In July of 2013, plaintiff allegedly responded inappropriately when she failed to initiate emergency protocol after she encountered three inmates in a two-person cell while she was performing a cell check. Plaintiff does not dispute that she saw three men in the cell, or that she knew that one inmate was not assigned to that cell, but she contends that this was not necessarily an emergency situation. When she asked the third inmate what he was doing in the cell, he responded, "Fighting", but plaintiff believed he was being sarcastic.

---

[1] "This Court ordinarily affirms a trial court's decision if it reached the right result, even for the wrong reasons." *Wickings v Arctic Enterprises, Inc*, 244 Mich App 125, 150; 624 NW2d 197 (2000).

According to plaintiff, she briefly continued her cell check in order to determine which cell the third inmate was assigned to, and then used her radio to call for help. However, her radio often did not work in her location in the jail, and by the time plaintiff made her way to an office to use an intercom, other deputies were responding to a fight that broke out in the cell. The victim of the assault suffered serious injuries including fractured vertebrae in his spine.

Other inmates contradicted plaintiff's account and claimed that the assault began before plaintiff performed the cell check. The cellmate of the victim stated that the victim made noise and called for help during the attack, and he claimed that there was blood on the wall and floor of the cell at the time that plaintiff inspected it. Inmates in nearby cells also alleged that they called to plaintiff to help during the attack, but she did not respond. Plaintiff was placed on unpaid suspension following the incident.

In August of 2013, ICSO held a disciplinary predetermination hearing. During the meeting, the undersheriff asked plaintiff if she had anything to add regarding the incident, and plaintiff responded that she did not believe she had done anything wrong and that she would not do anything differently in the future. Based on plaintiff's conduct concerning the assault, her disciplinary history, including verbal warnings and written reprimands, and her alleged failure to take responsibility, plaintiff's employment was terminated in September of 2013.

Following her termination, plaintiff filed a grievance against ICSO, which the Ingham County Human Resources Department denied at Step 1 and Step 2 of the grievance procedure. Plaintiff also filed an unfair labor practices charge against ICSO and her union, but she subsequently withdrew her charge. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging that the Ingham County human resources director violated Title VII of the federal Civil Rights Act, but the EEOC dismissed her claim.

In September of 2016, plaintiff filed a complaint against defendant, Ingham County, alleging gender and race discrimination and retaliation in violation of the ELCRA, a violation of the Michigan Equal Protection Clause, Const 1963, art I, § 2, a due-process challenge under 42 USC 1983, and a charge of racial discrimination in violation of 42 USC 1981. Plaintiff later withdrew her § 1983 claim. Defendant moved for summary disposition under MCR 2.116(C)(10), asserting that race and gender were not factors in plaintiff's termination and that it would have terminated any employee under the circumstances. Defendant also contended that it did not have any knowledge of or control over plaintiff's employment with ICSO, and that while plaintiff could have maintained a claim against defendant pursuant to § 1983 under a theory of supervisory liability, plaintiff dismissed that claim. The trial court granted defendant's motion for summary disposition on all claims because it concluded that defendant did not have knowledge of ICSO's employment decisions and that plaintiff could not maintain her remaining claims against defendant after she withdrew her § 1983 claim.[2] In addition, the trial court stated

---

[2] The trial court determined that *Van Domelen v Menominee Co*, 935 F Supp 918 (WD Mich, 1996), was controlling authority. As a federal district court case, *Van Domelen* is not binding

that summary disposition was appropriate because plaintiff failed to show that her termination was discriminatory. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's order granting summary disposition under MCR 2.116(C)(10). *Lytle v Malady (On Rehearing)*, 458 Mich 153, 177; 579 NW2d 906 (1998).

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).]

A genuine issue of material fact exists "when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

## III. CONST 1963, ART VII, § 6

Defendant asserts that it was constitutionally immune from liability for any actions taken by the sheriff under Const 1963, art VII, § 6, which provides:

> The sheriff may be required by law to renew his security periodically and in default of giving such security, his office shall be vacant. The county shall never be responsible for his acts, except that the board of supervisors may protect him against claims by prisoners for unintentional injuries received while in his custody. He shall not hold any other office except in civil defense.

In *Graves v Wayne Co*, 124 Mich App 36, 42; 333 NW2d 740 (1983),[3] this Court concluded that Const 1963, art VII, § 6 "exempts a county from any vicarious liability arising from acts of the county sheriff." This Court noted, however, that the provision did not preclude a county's liability for the acts of deputy sheriffs. *Id*. at 42. In *Lockaby v Wayne Co*, 406 Mich 65, 77; 276 NW2d 1 (1979) (opinion by LEVIN, J.), our Supreme Court also recognized that "[w]hile the county is constitutionally immune from '[responsibility]' for the sheriff's 'act'[,]

---

authority, but the trial court was free to consider it as persuasive authority. See *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

[3] This case was decided before November 1, 1990, and, therefore, it is "not binding precedent, MCR 7.215(J)(1), [but it] can be considered persuasive authority . . . ." *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012).

that immunity does not extend to the acts of others in its employ." Accordingly, the sheriff must have terminated plaintiff's employment in order for Const 1963, art VII, § 6 to preclude liability against the county.

MCL 51.70 provides, in relevant part, that "[e]ach sheriff may appoint 1 or more deputy sheriffs at the sheriff's pleasure, and may revoke those appointments at any time." "[T]he plain language of MCL 51.70 allows the sheriff complete discretion in who will be a deputy." *People v Van Tubbergen*, 249 Mich App 354, 367; 642 NW2d 368 (2002). See also *Nat'l Union of Police Officers v Wayne Co Bd of Comm'rs*, 93 Mich App 76, 89; 286 NW2d 242 (1979) ("[T]he matter of which of [the sheriff's] deputies shall be delegated the powers of law enforcement entrusted to him by the constitution is a matter exclusively within his discretion and inherent in the nature of his office, and may [not be] . . . delegated to a third party.").

In this case, plaintiff was terminated from her employment as an ICSO deputy following an investigation and a disciplinary predetermination hearing conducted by ICSO. The letterhead on which plaintiff's termination letter was written was from the Sheriff's Office and listed both the sheriff and the undersheriff. The letter stated that plaintiff violated a number of "rules and regulations of the Ingham County Sheriff's Office," and that her "employment with Ingham County [was] terminated." In addition, the undersheriff testified that he, the sheriff, the chief deputy, and a major were involved in the decision to terminate plaintiff's employment. When plaintiff's counsel asked the undersheriff if each of those four people was "able to authorize a discharge," the undersheriff responded, "Well, authorizing a discharge ultimately is the decision of the sheriff." The undersheriff also stated that he "made the recommendation to [the] Sheriff . . . that [plaintiff] be terminated."

The plain language of MCL 51.70 and *Van Tubbergen*, 249 Mich App at 367-368, as well as the undersheriff's testimony, plaintiff's job title, and the notice of termination bearing the sheriff's name, establish, both legally and factually, that the sheriff terminated plaintiff's employment. Even if plaintiff were able to establish that her termination was discriminatory, Const 1963, art VII, § 6 precluded defendant's liability for the sheriff's actions in terminating plaintiff's employment. Accordingly, the trial court properly granted summary disposition with respect to plaintiff's claims under the ELCRA.[4]

IV.  42 USC 1981

42 USC 1981 provides, in relevant part:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full

---

[4] We decline to address plaintiff's allegation that defendant violated the Equal Protection Clause of the Michigan Constitution, Const 1963, art I, § 2, because that claim is abandoned. See *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003).

and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizen . . . .

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

The Supreme Court has held that "Congress intended that the explicit remedial provisions of § 1983 be controlling in the context of damages actions brought against state actors alleging violation of the rights declared in § 1981." *Jett v Dallas Indep Sch Dist*, 491 US 701, 731; 109 S Ct 2702; 105 L Ed 2d 598 (1989). The Court also "rejected *respondeat superior* as a basis for holding a state actor liable under § 1983 for violation of the rights enumerated in § 1981 . . . ." *Id*. at 736. Therefore, in order to succeed on a claim under § 1981, a plaintiff "must show that the violation of his 'right to make contracts' protected by § 1981 was caused by a custom or policy . . . ." *Id*. at 735-736. In order to show a policy of discrimination, a plaintiff must demonstrate that "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Johnson v Vanderkooi*, 502 Mich 751, 762; 918 NW2d 785 (2018) (quotation marks and citation omitted). Alternatively, a municipality may incur liability "based on a governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels, if the relevant practice is so widespread as to have the force of law." *Id*. (quotation marks and citations omitted).

In this case, plaintiff's claim under § 1981 fails for two reasons. First, because defendant is a state actor, § 1983 provides the sole avenue for relief for plaintiff's claim that defendant violated her rights under § 1981. See *Jett*, 491 US at 736. Plaintiff withdrew her § 1983 claim and, thereby, precluded relief with respect to rights protected under § 1981. Second, plaintiff failed to show that her termination was pursuant to defendant's official policy or custom. Plaintiff's assertions establish only a theory of vicarious liability against defendant, which is not applicable in the context of § 1981 claims. See *Jett*, 491 US at 736. Plaintiff has failed to allege or establish that there was any official policy of discrimination at ICSO, or in Ingham County more generally. Further, plaintiff's claim that she was treated differently from other similarly situated employees on the basis of her race does not demonstrate a custom of discrimination so pervasive as to have the force of law. Accordingly, plaintiff cannot demonstrate municipal liability under § 1983, or, by extension, § 1981. See *Jett*, 491 US at 735-736; *Johnson*, 502 Mich at 762. Therefore, the trial court properly granted summary disposition of plaintiff's § 1981 claim.

## V. CONCLUSION

Const 1963, art VII, § 6 precludes defendant's liability for plaintiff's claims under the ELCRA, and, accordingly, the trial court properly granted summary disposition with respect to those claims. In addition, the only avenue of relief available to plaintiff for her claim that defendant violated her § 1981 rights was pursuant to a claim under § 1983, which plaintiff withdrew. Therefore, the trial court also properly granted summary disposition of plaintiff's § 1981 claim.

Affirmed.

/s/ Jonathan Tukel
/s/ Deborah A. Servitto
/s/ Michael J. Riordan